Dostoevsky Can I speak? Yes, you may. Okay. First of all, I want to apologize that I don't have an attorney to represent me today. I don't know. I already explained the reasons why I don't have an attorney. I already spoke with the office and they told me that I was not required to have an attorney for today's hearing and the court can make a decision based on the brief Mr. Michael Johnson, my attorney, had already filed. I believe you have a copy already of this briefing, right? Mr. Simeonov? Yes. All right. Just speak up a little bit because you're having trouble here. I'm having trouble. If you have any questions, I'll try to answer them if I could, but otherwise I don't have anything. I'll try to. Already Mr. Johnson has filed his brief. All right. I don't think I have any questions. You have any questions? The problem is what you're dealing with, as I understand it now, is the Board of Immigration Appeals says that the act under which you're claiming relief simply doesn't apply to exclusion proceedings. That's how I understand it, sir. And I know your brief argues that the language of it suggests that it does, but we have a kind of a long line of cases saying that this kind of relief normally doesn't apply to people in exclusion. Okay. So I guess I'm just maybe saying that's what you're up against. I understand it's a difficult case, and as I say, I don't think I can really explain very well Mr. Johnson's argument, but that's how I understand it, too, that because I'm placed in exclusion proceeding, that's why I'm ineligible to receive this relief. So factually, you're not contesting that you are in exclusion proceedings? No, no. The facts are the same as Mr. Johnson has presented them. So something that hasn't come on the previous cases and on the previous hearing, it just came to me. I know it's too late, and I don't know if it's relevant to the case at all, but I could explain why I didn't have a visa when I came to the United States. I also want to say that I didn't try to sneak into the country. When I came, I reported immediately. I entered at the airport in Miami, and I reported immediately to the immigration officer and seek political asylum. But it never came on the previous cases that the reason why I didn't have a visa. So I don't know if that would change anything at all. I'm not sure it would change anything at all, but you can tell us and we can see. Originally, I came with a friend of mine, and we were planning to go to Canada because we knew that in Canada they accept still immigrants from these communist countries. However, our plan was to take a plane from Mexico City and go back to Europe. The plane stopped in Newfoundland, which is Canada, and then we were planning to seek this political asylum. However, our plane had a delay of eight hours, and we had to go straight back to Madrid. That's why we couldn't get on the plane, and it happens twice. So that's why we decided to change our plane and decided to go to Miami. I have a ticket I can present to the court that I purchased. I just found it when I was going through my materials, and nowhere on the tickets you can see that there is any place in the United States. But you were not planning to come to the United States? I beg your pardon? You didn't buy a ticket to come to Miami? Yes. We had no intention to come to the United States at all. Again, this does not change the fact that when I came I didn't have a visa, so the visas are still the same they were when I presented them. All right. Well, does anybody else have any questions? All right. Well, thank you very much. Thank you. May it please the Court, my name is Andrew McLaughlin, and I represent the Respondent Attorney General of the United States. Like Mr. Simeonov, I stand on the brief that was written by my colleague in this case, subject to the questions of the Court. This is a fairly straightforward case where, regardless of the equities involved, the statute required the Board of Immigration Appeals to enforce the statute, and that's what's taking place in these exclusion proceedings.  Well, if we were to accept Petitioner's argument that there's a due process problem with interpreting the statute literally, does that – would that create a split with the Sixth Circuit and Seventh Circuit? It would, Your Honor. My understanding of Petitioner's argument in the brief is not that it's a due process problem with interpreting the statute literally. It's more that the Board did it on its own without revealing its intention in advance and giving him an opportunity to respond. Unfortunately, that's what the Board's job was in this situation. And in addition, even at this time, the Petitioner can't demonstrate any prejudice from that taking place. So there really isn't any relief. If the Petitioner – if the Board had gone back to the Petitioner and said, look, we're going to decide it on this basis, do you have any comment, it's evident from the current briefing that he still doesn't have an answer. There is no solution to the problem. The statute simply doesn't allow him to receive the relief that he was requesting. Thank you. So how does it stand? Did the Board offer Mr. Simeon voluntary departure? Is he under an order of deportation, or has that been stayed by us? Did his prior counsel make a motion to stay? No. He's under an exclusion order. Exclusion order. All right. And based on a petition for review to this Court, and we did not oppose the stay of deportation, of exclusion in that case. Basically, if the petition for review is denied, then his parole is revoked. That is correct, Your Honor. Is that a separate proceeding, or is that something that happens administratively? That happens administratively, Your Honor. And then what happens? Then he will be deported to Bulgaria. Does he have the option of voluntary departure? Not that I'm aware of, Your Honor. It doesn't apply in this context? No. The voluntary departure statute wouldn't allow that in this situation. I don't know if there are other options available to the agencies that could allow him to or could deport him to another location. That's a totally different issue, but in this situation, he would be removed. He would be deported to Bulgaria. All right. Does anyone have any further questions? All right. Thank you, counsel. Thank you, Your Honor. Simeonov v. Ashcroft will be submitted. I will take up the cases of Kamloi v. Ashcroft and Seppert-Johnston, which we have consolidated for both cases.
judges: Canby, Wardlaw, Gould